BAKER, Judge
(concurring in part and in the result):
I agree with the majority on Issues I and III. I agree with the majority’s legal framework on Issue II. And, I agree with the majority’s distinction between questions of public appearance and questions of actual bias. This ease does not test or question the military judge’s personal integrity. This case is about public perceptions of the military justice system, as appreciated through application of RCM 902(a), which is based on 28 USC § 455(a). Applying this law, the majority opinion assumes, but does not decide, that the military judge should have recused himself.
Applying the legal test for appearance of partiality under § 455(a), I believe a reasonable person with knowledge of all the facts[1] would reasonably question the impartiality of the military judge in this case based on the interplay of 3 conjunctive factors. First, during trial the military judge attended trial counsel’s party where he stayed for 2 hours; he did not just stop by. Second, and more importantly, during trial he teamed up with trial counsel in a tennis match. And, third, when the judge issued his written response to defense counsel’s recusal motion, he suggested that the accused exhibited paranoid *94 traits for questioning the judge’s impartiality,[2] that defense counsel had withheld information from his client,[3] and questioned defense counsel’s motives for seeking recusal.[4]
Defense counsel was understandably unwilling to embrace the judge’s description of trial counsel as a piece of sporting equipment.[5] Looking at the precipitating events and the judge’s written response to those events, I conclude that a reasonable person knowing these facts would reasonably question the impartiality of the judge. In the interest of public confidence in the military justice system, we should say as much.
Nonetheless, I agree with the majority that, applying the Liljeberg factors, the decision below in this ease need not be reversed. I obviously do not agree with the majority’s application of the third factor (the risk of undermining the public’s confidence in the judicial process). In my view, most members of the public would be surprised, if not stunned, to learn that a trial judge was socializing with and playing tennis with trial counsel during trial. Learning later that the judge considered it appropriate to play tennis with counsel, but that the situation would probably be different if the judge had dinner with counsel or went fishing with counsel would not assuage this surprise.[6] “[Jjustice must satisfy the appearance of justice.” Liljeberg, 486 U.S. at 864, 108 S.Ct. 2194 (internal quotation marks omitted). Questions of judicial appearance may be particularly important in the military justice system where trial judges wear government green and blue and not just judicial black.
However, I agree with the majority’s analysis of the first two Liljeberg factors involving the risk of injustice in this case and in other cases. Among other things, the question of recusal arose after closing argument and instructions on findings were concluded. Moreover, this was a trial before members and not before this judge alone. Finally, appellant has not pointed to any particular rulings by the military judge during sentencing, other than that pertaining to recusal, that were adverse to appellant. Nor is it clear whether the judge’s views expressed in his October memorandum were also his views in July during the sentencing portion of appellant’s trial. He had almost 4 months to think it over. Therefore, on balance, reversal of the decision below is not required.

. United States v. Wright, 52 MJ 136, 141 (1999).

. "Not all accused show paranoid traits, but it is important to remember that their trial is probably the most significant event going on in their lives, so that if they see a prosecutor speak privately to a judge, or a court member converse with a bystander, their first assumption is that the conversation must concern their trial.” Essential Findings and Ruling on Defense Motion for Recusal and Mistrial, 30 October 1998, at 8 n. 13.

. "It is also possible that she would feel betrayed by the fact that some of the information now being asserted against the judge had previously been withheld from her by her own counsel.” Essential Findings at 9.

. “It has been disclosed that one of the defense counsel present at this party communicated the fact of my attendance and the fact of the tennis match to the accused's counsel. Apparently he felt compelled to and apparently the accused’s counsel felt compelled to advise the accused, and apparently they left the determination of whether to make this motion with the accused. In a real-world environment, one might question this chain of events, but the everyday reality in today’s military is that appellate defense counsel make their career second guessing trial level defense counsel, and military appellate courts order DuBay hearings based upon bizarre, merit-less, and unsupported allegations.” Essential Findings at 11-12.

. "However tennis as a sport is hardly a social activity, or even a sport involving camaraderie. It is simply a competition in which the opponent (or the partner in doubles) is an essential piece of equipment.” Essential Findings at 4 n. 7.

. “Would the situation be different if the judge and his wife had gone to dinner with the prosecutor and his wife during trial? Would the situation be different if the judge and the prosecutor went on a fishing trip during the trial? Probably in both cases the answer would b[e] 'yes,' because of the inherent recognition that such activities are far more conducive to one-on-one personal conversations, and far more indicative of a close personal friendship.” Essential Findings at 13-14 (footnote omitted).